#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| William Jude Hart, | ) |
| | ) |
| Plaintiff, | ) **FINDINGS OF FACT, CONCLUSIONS** |
| | ) **OF LAW, AND ORDER FOR** |
| vs. | ) **JUDGMENT** |
| | ) |
| Leann K. Bertsch, Rick Gardener, | ) |
| Don Olson, and Colby Braun, | ) Case No. 1:14-cv-13 |
| | ) |
| Defendant. | ) |

This case was tried before the Court on March 15, 2017, in Bismarck, North Dakota. See Docket No. 77. The Plaintiff, William Hart, was not present. Hart's counsel, Ross Espeseth, and defense counsel Michael Mahoney were present and participated in the proceedings. The Plaintiff brought two causes of action against the Defendants, Leann K. Bertsch, Rick Gardner, Don Olson, and Colby Braun: racial discrimination and retaliation. See Docket No. 9. The Court heard the testimony presented at trial and has carefully considered all of the evidence and the exhibits. Both parties submitted Proposed Findings of Fact and Conclusions of Law on July 31, 2017. See Docket Nos. 82 and 83. The Court makes the following findings of fact and conclusions of law.

### **FINDINGS OF FACT**

1. William Hart ("Hart") is an inmate at the North Dakota State Penitentiary ("NDSP").

2. Leann Bertsch ("Bertsch") is the Director of the North Dakota Department of Corrections and Rehabilitation ("DOCR").

3. Rick Gardner ("Gardner") is the Director of Rough Rider Industries.

1

4. At all times relevant to the complaint, Bruce Korte ("Korte") was the Sign Shop Supervisor at Rough Rider Industries. Korte is now retired after working 32 years at Rough Rider Industries.

5. This case was tried before the Court without a jury on March 15, 2017.

6. The Court heard testimony from Dr. Penny Hetleved, Rick Gardner, and Bruce Korte on behalf of Defendants. A transcript of the Plaintiff's trial deposition was also received in evidence and considered by the Court.

## THE NDSP EDUCATION DEPARTMENT

7. The basis of all DOCR education policies are primarily consistent across DOCR, with some differences based upon the facility. Tr. 9.

8. The Education Department and Rough Rider Industries were formerly one DOCR department, but the Education Department became a separate department in January 2011. Tr. 9, 10.

9. The new Education Department is set up to work as its own school district, with assessments and instructional strategies available to assist the inmates. Tr. 17.

10. Under the former system, inmates self-reported their education level with no formal verification process. Tr. 10, 17.

11. The new Education Department verifies an inmate's self-reported education level, and inmates are automatically enrolled in the Education Program if they do not have a diploma. Tr. 18.

12. Inmates who do not have a high school diploma or GED can obtain a diploma in the Education Program. Tr. 10.

13.     The Education Program is mandatory for inmates who do not have a high school diploma or GED.  See Ex. 94; Tr. 11, 17.  Education is considered to be an inmate's first job at the institution.

14.     Inmates are not allowed to be involved in the Education Program and also work an institutional or industrial job because the Education Program is considered full-time employment.  See Ex. 100, Tr. 11, 14, 18.

15.     Inmates are required to work while they are at the North Dakota State Penitentiary (NDSP).  See Ex. 94, 98; Tr. 12, 54.

16.     NDSP inmates have the following three work options:  education, institutional work, or industrial work.  Tr. 17, 55.  The inmates are paid for all work performed.

17.     The record reveals that education is one of the lowest paying jobs at NDSP.  Tr. 39.  The current pay is $1.55 per day.  The highest pay at NDSP is in the range of $2.10 - $2.30 per hour.

18.     When DOCR first changed its education policy and began requiring inmates without diplomas to enroll in the Education Program, some of the inmates who were already working in jobs outside of the Education Department were "grandfathered" in under the former DOCR policy.  Those inmates were allowed to remain in their work positions.  If a grandfathered inmate lost his job for any reason, he was then automatically enrolled in the Education Program.  Tr. 18.

19.     When William Hart first came to the NDSP, he completed an Educational Assessment Information form dated December 2, 1996, describing information about his educational level and abilities.  See Ex. 125.

20.     Hart's Educational Assessment Information form does not include documentation of any learning disability prior to May 25, 2012.  See Ex. 125.

21. A "Read Right" Interview Form, dated May 25, 2012, shows Hart stated: "I have a learning disability." See Ex. 127. The "Read Right" program is mandatory for all inmates. Hart walked out of the assessment and was subsequently enrolled in "Read Write." See Ex. 127.

22. The Woodcock-Johnson tests revealed that Hart functions at a kindergarten level for the majority of his academic tasks. See Ex. 124.

23. A North Dakota DOCR Education Exit form shows Hart exited the Education Program on March 10, 2016. See Ex. 110.

24. Rough Rider Industries is a self-funded entity within the DOCR with the purpose of developing vocational skills for inmates that will be transferrable to the outside community. Tr. 53.

25. Rough Rider Industries manufactures furniture, metal products, sign products, garments, plastic garbage bags, upholstery, license plates, and computer related design work. Tr. 53.

26. Rough Rider Industries runs the commissary where inmates can purchase hygiene products, snacks, and other food items. Tr. 53.

27. Rough Rider Industries' primary operations are located within the secure perimeter of the North Dakota State Penitentiary but not within the confines of the institution itself. Tr. 54.

28. Inmates consider working at Rough Rider Industries to be preferred work for several reasons, including the following: Rough Rider Industries has the highest paying jobs; Rough Rider Industries allows inmates more freedom of movement; Rough Rider Indsutries pays on an hourly basis but other jobs are generally paid per day; Rough Rider Industries offers the most hours; and Rough Rider Industries offers industrial skills that are highly transferable to the outside world. Tr. 55.

29. The work at Rough Rider Industries is considered to be a privilege and there are numerous eligibility requirements. See Ex. 97.

30. There are more eligibility requirements to qualify for work at Rough Rider Industries than there are for other institutional jobs. Tr. 56.

31. To be eligible for work at Rough Rider Industries, inmates are required to be in compliance with all rehabilitative recommendations. They must not have been found guilty of a rule infraction that includes loss of good time within the past six (6) months or a Level II infraction within the last sixty (60) days. An inmate must not have been terminated from Rough Rider Industries within six (6) months of applying with Rough Rider Industries. They must be able and available to work forty (40) hours a week. They also must work at least sixty (60) days within the institution before applying; and have a high school diploma or GED. See Ex. 94, 97; Tr. 56.

32. The eligibility requirements are not arbitrary. They serve valid business and rehabilitative purposes. Tr. 58, 61.

33. The Rough Rider Industries director may make discretionary exceptions to several of the eligibility requirements. Ex. 94, 97; Tr. 61.

**RICK GARDNER**

34. At the time of trial, Rick Gardner had been working as the Director of Rough Rider Industries for five and a half years. Tr. 52

35. The only eligibility requirement Gardner has waived for Rough Rider Industries workers in the past was the requirement that inmates have sixty days of work. Gardner did this when the shop was busy and more workers were needed. Tr. 61-62.

36. Inmate William Hart did not meet the Rough Rider Industries educational requirements when he applied at Rough Rider Industries or when he began work with Rough Rider Industries in 2007. Tr. 64.

37. The specific job Hart performed at Rough Rider Industries in 2007 and later, no longer exists. Tr. 65.

38. Inmates are hired at Rough Rider Industries after an eligibility determination is made and the inmate has completed the interview process. Tr. 72.

39. William Hart was terminated as an employee at Rough Rider Industries because of a fight with another inmate which occurred in the Rough Rider Industries shop. Tr. 66-67; See Ex. 75. Hart was then automatically enrolled in the Education Program.

40. Hart re-applied at Rough Rider Industries in 2013 and was denied because of the education requirement. See Ex. 122; Tr. 74-75.

41. The other inmate involved in the fight with Hart did regain his employment with Rough Rider Industries after waiting the required six (6) month period. Unlike Hart, the other inmate had his GED, had no disciplinary write ups, and met all of the other Rough Rider Industries qualifications. Tr. 77.

42. Hart later re-applied for employment at Rough Rider Industries on March 11, 2016, and was found to be eligible and placed on the Rough Rider Industries' hiring list. Tr. 94-95.

43. Hart was later removed from the Rough Rider Industries hiring list because he received a Level III incident report for failure to comply with rehabilitative programming at the institution. Hart was formally exited from the Education Department on or about March 10, 2016. Ex. 93; Tr. 96.

44. At the time of the bench trial in this matter, the record reveals that Hart was not eligible to submit an application for employment at Rough Rider Industries because he could not meet the basic requirement of holding an institutional job for sixty (60) days.  Tr. 99.

45. The record reveals that Hart never presented any complaints to DOCR about Rough Rider Industries employees using racial comments.  See Tr. 123.

**BRUCE KORTE**

46. In 2015, Bruce Korte retired after being the sign shop supervisor at Rough Rider Industries for 32 years.  Tr. 120-21.

47. Korte was not Hart's supervisor while Hart was employed at Rough Rider Industries.  Tr. 121-28.

48. Korte filed a disciplinary report after observing Hart and another inmate (Craig) fighting at Rough Rider Industries.  See Ex. 75; Tr. 122-23.

49. Korte was Rough Rider Industries' representative on the Multi-Disciplinary Committee ("MDC") when the MDC reviewed Hart's application for employment in 2013, and found that Hart was not eligible due to the lack of education.  Ex. 106; Tr. 126-27.

**WILLIAM HART**

50. Hart has been incarcerated at the NDSP for over 20 years.  See Docket No. 75, p. 5.

51. Hart identifies as Creole, which is a mix of African American descent.  See Docket Nos. 38 and 83.

52. Hart reported to DOCR that he had completed seventh grade.  Tr. 21.

53. Hart applied with Rough Rider Industries on March 11, 2016, was found eligible to work at Rough Rider Industries, and was placed on the Rough Rider Industries' hiring list.  See

Ex. 109; Tr. 95. However, at the time of trial in this matter, Hart had been removed from Rough Rider Industries' hiring list due to receiving a Level III Incident Report. Tr. 96; See Ex. 93.

54. Hart allegedly suffers from chronic obstructive pulmonary disorder (COPD) which prevents him from working a janitorial job with Rough Rider Industries. See Ex. 1, 39; Tr. 108.

55. After being exited from the Education Program on March 10, 2016, Hart has refused all other DOCR work. Tr. 49, 98.

**OTHER INMATES**

56. Inmate Thomas Vermilya ("Vermilya") is caucasian, does not meet the Rough Rider Industries educational requirements, and began working for Rough Rider Industries in 1994. Tr. 86.

57. Vermilya does not qualify for a Rough Rider Industries position under the current DOCR policies. However, Vermilya was hired 22 years ago when employment at Rough Rider Industries was governed by a different policy.

58. When Rick Gardner discovered Vermilya did not meet the current Rough Rider Industries eligibility requirements, Gardner chose to allow Vermilya to retain his position after taking into consideration the totality of the circumstances presented. Tr. 87.

59. Vermilya was still employed at Rough Rider Industries at the time of the trial on March 15, 2017. However, in the event Vermilya would ever lose his position at Rough Rider Industries and wish to reapply, he would be subject to the same eligibility requirements as all other inmates, including the educational requirement. Ex. 94.

60. The record reveals that Vermilya's race was never a consideration in his employment. Tr. 87.

61. Former inmate Alvin Engelhardt ("Engelhardt"), is caucasian and does not meet the current educational requirement, but was selected for a Rough Rider Industries position in 2007. Tr. 86.

62. Engelhardt was grandfathered in and allowed to work at Rough Rider Industries until he terminated because of health reasons. Tr. 88.

63. The record reveals that Engelhardt's race was never a consideration in his employment. Tr. 87.

64. Inmate Wilson Paul ("Paul"), is Native American who did not meet the educational requirement, but was selected for a Rough Rider Industries position. Tr. 88.

65. Gardner did not grant inmate Paul an exception. Instead, Paul was selected by the Commissary supervisor to fill a vacant position in the Commissary Department outside of the Multi-Disciplinary Committee. Tr. 88.

66. Rick Gardner considered that inmate Paul was being formally exited from the Education Program, Paul had performed well and had no disciplinary issues. Tr. 89.

67. Paul's race was not a consideration in his employment. Tr. 89.

68. Inmate Phillip Seewalker ("Seewalker") is a Native American inmate who does not meet the educational requirements but has been employed at Rough Rider Industries. Tr. 90. Gardner had considered terminating his employment but chose to allow Seewalker to continue his employment. Tr. 90.

69. Seewalker was in the process of being formally exited from the Education Program when his name was inadvertently added to the Rough Rider Industries selection list. Tr. 91.

70. Seewalker had been performing his job well and there were no institutional disciplinary issues. Tr. 91.

71. The record reveals that Seewalker's race was not a consideration in his employment. Tr. 91.

72. Brian Muzzy ("Muzzy") is a caucasion inmate who also did not meet the educational requirement when initially hired by Rough Rider Industries. Tr. 91.

73. Muzzy has worked in the Rough Rider Industries metal shop and received his GED about six (6) months after gaining employment with Rough Rider Industries. Tr. 91.

74. Muzzy received no disciplinary write-ups. Tr. 91.

75. Muzzy's race was not a consideration in his employment. Tr. 91.

76. The evidence revealed that Gardner did not waive the education requirements for Vermilya, Engelhardt, Paul, Seewalker, or Muzzy. Instead, Gardner considered the individual circumstances of each inmate when he decided to retain them in their Rough Rider Industries positions. Tr. 92.

## **CONCLUSIONS OF LAW**

1. This Court has jurisdiction of the subject matter and the parties.

2. The burden of proof rests with the plaintiff, and Hart has the burden of proving the DOCR discriminated against him. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

3. The Court finds that Hart has failed to present sufficient evidence to support the inference that DOCR's actions were improperly motivated. Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1046 (8th Cir. 2003); Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997).

4.      Hart has failed to show that Bruce Korte denied his application for employment because of Hart's race and because of complaints Hart allegedly made when he previously worked at Rough Rider Industires. Tr. 123-125.

5.      The two caucasian inmates and two Native American inmates who currently do not meet the educational requirements for employment at Rough Rider Industries were retained for legitimate, non-discriminatory reasons. Tr. 87-93.

6.      Hart has failed to establish a *prima facie* case of discrimination. To establish a prima facie case of discrimination, Hart must demonstrate the following: (1) he is a member of a protected class; (2) he was qualified for the relevant position; (3) there was an adverse employment action; and (4) that some evidence of record supports the inference of improper motivation. Hannoon, 324 F.3d at 1046.

7.      The record reveals that Hart satisfies the first element in his *prima facie* case because it is undisputed that Hart identifies as Creole and, as such, is a member of a protected class. See Docket Nos. 38 and 83.

8.      The Court finds that Hart has failed to satisfy the second element necessary to establish a *prima facie* case. The undisputed record reveals that Hart was not qualified for the position he sought because he clearly did not meet the basic eligibility requirements. Rough Rider Industries required education programming compliance plus at least a sixty (60) day record of good work. When Hart applied with Rough Rider Industries, he did not meet either of these basic requirements, and he would only have been eligible for a position if he had requested an exception for "extraordinary circumstances," and the exception was then approved by the Rough Rider Industries Director. See Ex. 94, p. 57. The record reveals that Hart never alleged nor proved that he requested such an exception in this case.

9. The record reveals that Hart has satisfied the third element of a *prima facie* case because Rough Rider Industries denied Hart's application. It is well-established that a failure to hire is an adverse action for discrimination claims. McKay v. U.S. Dept. of Transp., 340 F.3d 695, 698 (8th Cir. 2003).

10. The Court finds that Hart has wholly failed to satisfy the fourth element necessary to establish a *prima facie* case. Hart has failed to present sufficient evidence to support an inference of improper motivation. It is clear Hart must demonstrate that some evidence of record supports the inference of improper motivation. The record reveals that Hart was terminated as an employee because he was involved in a fight with another inmate. Thereafter, Hart's application for employment was denied because he never met the basic educational requirements. See Ex. 106. Hart also failed to provide evidence that Korte denied Hart's application for employment at Rough Rider Industries based on an improper motivation.

11. Hart has alleged Korte and other supervisors at Rough Rider Industries used racial slurs regarding African American inmates. See Docket No. 38-1. The Court finds that Hart's allegations remain unsubstantiated, and he has failed to submit any relevant evidence to support such a claim other than his own allegations, which the Court finds are not credible. It is clear that:

> [A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or **if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue** and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 148 (2000) (emphasis added).

The testimony of witnesses Dr. Penny Hetleved, Rick Gardner, and Bruce Korte refuted Hart's allegations, and specifically the allegations of racial slurs and discrimination. The Court finds the testimony of the defense witnesses to be forthright and credible.

12.     The Multi-Disciplinary Committee's denial of Hart's job application was not based on an act of retaliation against Hart. Instead, the Multi-Disciplinary Committee simply determined that Hart did not meet the basic eligibility requirements for Rough Rider Industries employment. See Ex. 106.

13.     The Court finds that Bruce Korte did not retaliate in any manner against Hart. Korte expressly denied making any derogatory racial remarks toward Hart. Tr. 123-24. The Court further finds that Hart has failed to demonstrate an inference of improper motivation regarding his alleged retaliation claim against Korte. The Court finds that the testimony of Korte on this disputed issue was credible.

14.     The four inmates who do not currently meet the educational requirements for employment have non-discriminatory reasons for retaining their Rough Rider Industries positions. The Court finds that Hart was not similarly situated with these inmates when his application was denied. Torgerson v. City of Rochester, 643 F.3d 1031, (2011). To the contrary, Hart was involved in a fight while employed at Rough Rider Industries on June 29, 2011; he was terminated from his position; and later did not meet the basic underlying requirements for employment at Rough Rider Industries.

15.     Any Rough Rider Industries inmate who loses his position at Rough Rider Industries and then later seeks to reapply, is reconsidered for employment in the same manner as all other inmates – the inmate would either have to meet the eligibility requirements or obtain an exception. Neither scenario occurred in Hart's case.

16.     When Hart's application was denied, he was not similarly situated with the Rough Rider Industries inmates who did not meet the eligibility requirements for employement.

17.     The Plaintiff, William Hart, has failed to establish a *prima facie* case, and has failed to sustain his burden of proof as to the claims of discrimination and retaliation.

## ORDER FOR JUDGMENT

Based on the foregoing Findings of Fact and Conclusions of Law, it is **ORDERED** that Judgment shall be entered against William Hart and in favor of the Defendants, dismissing with prejudice all of Hart's claims against Leann K. Bertsch, Rick Gardner, Don Olson, and Colby Braun.

**IT IS SO ORDERED.**

Dated this 25th day of August, 2017.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court